# STATE OF MICHIGAN

# COURT OF APPEALS

---

BLACK LAW OFFICES, P.C.,

        Plaintiff-Appellant,

v

FIRST MERIT BANK, formerly known as
CITIZENS BANK, BUTZEL LONG, P.C.,
KEVIN C. O'MALLEY, MICHAEL W.
RAMSEY, and MICHAEL W. RAMSEY AND
ASSOCIATES, P.C.,

        Defendants-Appellees.

UNPUBLISHED
November 15, 2016

Nos. 328197; 328699
Ingham Circuit Court
LC No. 14-000957-CZ

---

Before: BOONSTRA, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

In this consolidated appeal,[1] plaintiff appeals by right the trial court's orders granting defendants' motions for summary disposition and awarding attorney fees and costs. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This appeal arises out of the eviction of plaintiff from a building in which plaintiff's offices were housed, following nonpayment on two promissory notes by which plaintiff's owner had funded the purchase of the property. More specifically, Randie Black (Black), an attorney and the sole shareholder of plaintiff professional corporation, entered into a loan agreement with Citizens Bank and gave it two promissory notes, one of which was secured by a mortgage on real property purchased by Black and used as the situs of plaintiff professional corporation. Black granted plaintiff continuing possession as the law office building's primary tenant. In November 2011, after Black defaulted, Citizens Bank filed a collection action against Black in the circuit court for nonpayment of the two promissory notes and initiated a foreclosure by advertisement.

---

[1] See *Black Law Offices, PC v First Merit Bank*, unpublished order of the Court of Appeals, entered September 23, 2015 (Docket Nos. 328197; 328699).

Black and plaintiff then re-filed a complaint in the circuit court against Citizens Bank alleging a variety of tort, contract, and statutory claims.[2] That complaint was eventually treated as a counterclaim in the circuit court proceedings. Subsequently, Citizens Bank bought the building at a sheriff's sale. Black did not redeem the property during the redemption period.

Plaintiff and Black did not vacate the premises following the sheriff's sale and running of the redemption period. In November 2012, Citizens Bank filed a complaint in the district court against Black for summary possession of the law office building and to evict Black. The district court issued an order declaring that the sheriff's sale was valid and that Citizens Bank was entitled to possession of the property. The court also declared null and void any lease agreement entered into by Black or plaintiff with respect to the law office building.[3] Black was also ordered to vacate the premises and surrender possession to Citizens Bank. The court authorized Kevin O'Malley, an attorney with Butzel Long (a professional corporation and law firm engaged by Citizens Bank) to restore possession of the law office building to Citizens Bank and, if necessary, "to remove all occupants from the premises."

Black sought leave to appeal the district court's decision to the circuit court, at which time Citizens Bank's case and plaintiff's and Black's counterclaim were still pending before that court. At some point during proceedings below, First Merit Bank succeeded to the interests of Citizens Bank. While Black's leave application was pending in the circuit court, the district court issued an order of eviction authorizing court officer Michael Ramsey to restore possession of the building to First Merit Bank and to put the bank in full possession of the premises. Black and plaintiff were evicted in 2013. The circuit court ultimately denied Black's application for leave to appeal her eviction, awarded summary disposition in favor of First Merit Bank on its monetary claims, and dismissed plaintiff's and Black's counterclaim.[4]

---

[2] After Black defaulted on the promissory notes but before Citizens Bank began foreclosure proceedings, Black and plaintiff sued Citizens Bank and others, alleging a variety of tort, contract, and statutory claims regarding purported improprieties related to Black's line of credit and associated negative credit reports for late payments. The parties agreed to dismiss plaintiff's claims without prejudice. It is those claims that were later re-filed after Citizens Bank commenced its action.

[3] Black, as the owner of the property, leased office space to plaintiff, a corporation of which, again, Black was the sole shareholder.

[4] In *Citizens Bank v Black*, unpublished opinion per curiam of the Court of Appeal, issued July 23, 2015, (Docket No. 318982), we affirmed the trial court's decision denying Randie Black's delayed application for leave to appeal her eviction from the property, holding that the eviction was valid and upholding the circuit court's dismissal of her counterclaim as well as the grant of summary disposition in favor of Citizens Bank. This opinion has attempted to provide an overview of the previous litigation that was the subject of that appeal. More detail regarding that litigation may be found in our previous opinion. See *id*., unpub op at 1.

Following the eviction, and despite the full litigation of the propriety of the foreclosure proceedings and eviction in the previous series of suits and appeals, plaintiff filed a new suit against defendants in the circuit court, alleging forcible ejectment and unlawful detainer, trespass, abuse of process, tortious interference with business relationships and expectancies, defamation, and conversion. All defendants filed motions for summary disposition under various subrules of MCR 2.116(C) and requesting attorney fees and costs. The trial court granted defendants' motions for summary disposition on varying grounds. The trial court also found that plaintiff's claims were frivolous and awarded defendants attorney fees and costs. This appeal followed.

## II. RECUSAL

Plaintiff first argues that Judge Richard Garcia should have recused himself from the present litigation because he was the initial decision-maker in the previous proceedings and his involvement in the case was too close and too extensive to avoid the risk of actual or perceived bias. We disagree. Plaintiff moved below for Judge Garcia to recuse himself, which motion Judge Garcia denied. This issue is therefore preserved for appeal. *Reed v Reed*, 265 Mich App 131, 163; 693 NW2d 825 (2005). "The factual findings underlying a ruling on a motion for disqualification are reviewed for an abuse of discretion, while application of the facts to the law is reviewed de novo." *Butler v Simmons-Butler*, 308 Mich App 195, 226; 863 NW2d 677 (2014). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*. "A trial judge is presumed to be unbiased and the party moving for disqualification bears the burden of proving that the motion is justified." *Id*. at 227.

MCR 2.003(C)(1) provides in part that disqualification of a judge is warranted for reasons that include, but are not limited to, the following:

> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in the Canon 2 of the Michigan Code of Judicial Conduct.

> (c) The judge has personal knowledge of disputed evidentiary facts concerning the proceeding.

MCR 2.003(C)(1)(b) is focused on the appearance of impropriety. *People v Aceval*, 486 Mich 887, 889; 781 NW2d 779 (2010). "This inquiry is generally twofold: first, whether defendant's due process rights, as enunciated in *Caperton*, would be impaired . . . and second, whether there was an appearance of impropriety as set forth in Canon 2 of the Michigan Code of Judicial Conduct . . . ." *Id*.

Plaintiff argues that Judge Garcia should have recused himself because he served as a decision-maker in the previous eviction proceedings between Black and Citizens Bank. Judges and decision-makers have been disqualified "without a showing of actual bias in situations where 'experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.' " *Crampton v Mich Dep't of State*, 395 Mich 347, 351;

235 NW2d 352 (1975). Among such situations is where the judge or decision-maker "might have prejudged the case . . . because of prior participation as an accuser, investigator, fact finder or initial decisionmaker." *Id*. Nonetheless, in *People v White*, 411 Mich 366, 386; 308 NW2d 128 (1981), the Michigan Supreme Court explained that "[m]erely proving that a judge conducted a prior proceeding against the same defendant does not amount to proof of bias for purposes of disqualification . . . ."

The record reflects that Judge Garcia issued a written opinion dismissing as untimely Black's application for leave to appeal the district court's grant of an order of eviction to First Merit Bank. Judge Garcia also denied Black's motion for reconsideration. Black then filed a delayed application for leave to appeal and a motion for stay pending appeal, and Judge Garcia issued an order denying the motion for stay pending appeal for failure to show the possibility of irreparable harm. After plaintiff and Black were evicted, Judge Garcia issued an order denying Black's delayed application for leave to appeal.

Thus, Judge Garcia did not preside as an initial decision-maker in plaintiff's previous case; rather, he heard the matter pursuant to the circuit court's appellate jurisdiction. Further, plaintiff has failed to show that Judge Garcia harbored any actual bias or prejudice against it stemming from serving as an appellate judge in the underlying action. In essence, plaintiff's argument is that Judge Garcia's rulings in his appellate capacity (and on procedural grounds) indicate that the judge must have formed beliefs about the merits of the current action that cannot be set aside. This is mere speculation. The fact that a trial court is acquainted with a party's prior history is not indicative of bias or prejudice by itself. See *People v Rich*, 172 Mich App 494, 496; 432 NW2d 352 (1988). More importantly, repeated rulings against a litigant do not merit disqualification "unless the opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality." *Gates v Gates*, 256 Mich App 420, 440; 664 NW2d 231 (2003) (internal quotation marks and citation omitted). Neither Judge Garcia's written opinions nor his comments from the bench show any such deep-seated favoritism or bias against plaintiff.

Nor do we agree that Judge Garcia should have recused himself to avoid the appearance of impropriety. "The test for determining whether there is an appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *Aceval*, 486 Mich at 889 (internal quotation marks and citation omitted). Plaintiff argues that an appearance of impropriety existed because "Judge Garcia had already reviewed the District Court eviction on its merits, and therefore, likely reached conclusions about the propriety of the actions of the involved parties and their relative credibility as well as the merits of the lawsuit filed by Black PC arising out of that eviction." Again, whether the issue is actual impropriety or appearance of impropriety, it is well-established that repeated rulings against a litigant do not merit disqualification "unless the opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality." *Gates*, 256 Mich App at 440 (internal quotation marks and citation omitted). Because we find no such display or even the appearance of such a display, we hold that Judge Garcia did not err by declining to recuse himself. *Butler*, 308 Mich App at 226.

III. SUMMARY DISPOSITION

Plaintiff next argues that the trial court erred by granting summary disposition in favor of defendants on various grounds. We disagree. "A defendant is entitled to summary disposition under MCR 2.116(C)(7) if the plaintiff's claims are barred because of an immunity granted by law." *Pew v Mich State Univ*, 307 Mich App 328, 332-332; 859 NW2d 246 (2014). The moving party may support its motion with affidavits, depositions, admissions, or other documentary evidence that would be admissible at trial. MCR 2.116(G)(5)-(6). On appeal, this Court must consider the contents of the plaintiff's complaint as true, unless contradicted by documentary evidence. *Pew*, 307 Mich App at 332. "If reasonable minds could not differ on the legal effects of the facts, whether governmental immunity bars a plaintiff's claim is a question of law." *Id*.

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint based on the pleadings alone. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). The court "reviewing the motion must accept as true all factual allegations supporting the claim, and any reasonable inferences or conclusions that might be drawn from those facts." *Gorman v American Honda Motor Co*, 302 Mich App 113, 131; 839 NW2d 223 (2013). Nonetheless, "the mere statement of a pleader's conclusions, unsupported by allegations of fact, will not suffice to state a cause of action." *ETT Ambulance Serv Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 395; 516 NW2d 498 (1994). Summary disposition under (C)(8) is appropriate only when the claims are "so clearly unenforceable as a matter of law that no factual development could justify recovery." *Wade v Dep't of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph*, 491 Mich at 206. Summary disposition is proper if there is "no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). The court considering the motion "must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Joseph*, 491 Mich at 206. All reasonable inferences are to be drawn in favor of the nonmovant. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010).

On appeal, plaintiff does not challenge the trial court's findings as to each of the individual claims. Rather, plaintiff argues that trial court's decision was erroneous because it was based on an incorrect understanding of the previous eviction proceedings. Plaintiff argues that the August 13, 2013 eviction order, which served as a basis for plaintiff's eviction, did not identify either plaintiff or any other occupant of the building. Rather, it was directed to Black. Further, plaintiff argues, a corporation is distinct from its shareholders, and notice to Black therefore did not constitute notice to plaintiff.

However, the record shows that plaintiff had actual notice of the foreclosure proceedings, the sheriff's sale, and the civil suit between Black and Citizens Bank. Black is plaintiff's sole shareholder and was counsel for plaintiff in the current matter. As plaintiff's landlord, sole shareholder, and counsel, Black knew that the district court had declared null and void any lease agreement into which she and plaintiff had entered, that the court had declared that Citizens Bank was entitled to possession of the premises, and that she had been ordered to vacate the

building and surrender possession to Citizens Bank on or before December 31, 2012. It thus strains credulity for plaintiff to contend that it had no notice of the eviction proceedings. Further, plaintiff does not identify a proper person—other than Black—who could have been served with process in order to effect service of the eviction order on plaintiff.

Further, the August 13, 2013 eviction order authorized the court officer to restore possession of the law office building to First Merit Bank. Plaintiff does not challenge the validity of this order, but asserts that it had no notice because it was not named in the order. A corporation is "an artificial being, invisible, intangible, and existing only in contemplation of law," whose existence a court honors by presuming that the entity is separate and distinct from its owners. See *Green Ziegelman*, 310 Mich App 436, 451; 873 NW2d 794 (2015). "However, the fiction of a distinct corporate entity separate from the stockholders is a convenience introduced in law to subserve the ends of justice. When this fiction is invoked to subvert justice, it is ignored by the courts." *Id*.

We conclude that, under the circumstances of this case, justice requires that the corporate veil be pierced and that Black and plaintiff be treated as one for the purposes of notice of the eviction proceedings. Black and plaintiff have been fully involved for years in litigating various actions stemming from the foreclosure of the property that housed plaintiff's offices. Throughout the proceedings, Black has advocated both on her own behalf and on behalf of the professional corporation (plaintiff) that bears her name. Both plaintiff and Black were well aware that the genesis of this entire matter was Black's failure to pay on the promissory notes, which had resulted in a sheriff's sale and eviction proceedings. Drawing a distinction between plaintiff and Black under these circumstances would sanction the type of litigant gamesmanship that is consistently decried and discredited.[5]

## IV. ATTORNEY FEES AND COSTS

Plaintiff argues that the trial court erred when it held that plaintiff's claims were frivolous and awarded attorney fees and costs to defendants. We disagree. The findings of fact underlying an award of attorney fees are reviewed for clear error, *Brown v Home Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012), including a trial court's finding of frivolousness, *John J*

---

[5] Indeed, to quote this Court's opinion in the earlier, related litigation:

> It is clear to us, as it was to the circuit and district court, that delaying and stalling efforts, needless litigation, and gamesmanship were all employed by Black in her attempt to fend of the inevitable foreclosure and eviction. Black was well aware of the unfolding eviction events, and none of her arguments changed the plain and undisputed facts that she had defaulted on the law-office note and mortgage, that Black did not redeem the property following foreclosure, and that the bank was entitled to a judgment of possession.

*Citizens Bank v Black*, unpublished opinion per curiam of the Court of Appeal, issued July 23, 2015, (Docket No. 318982). Apparently, nothing has changed.

*Fannon Co v Fannon Prods, LLC*, 269 Mich App 162, 168; 712 NW2d 731 (2005). Underlying questions of law are reviewed de novo, *Loutts v Loutts*, 298 Mich App 21, 24; 826 NW2d 152 (2012), and the decision whether to award attorney fees and the determination of the reasonableness of the fees, matters within the trial court's discretion, are reviewed for an abuse of discretion, *Windemere Commons I Ass'n v O'Brien*, 269 Mich App 681, 682; 713 NW2d 814 (2006).

Michigan follows the "American rule," which provides that a party may not recover attorney fees as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract. *Reed*, 265 Mich App at 164. This rule prevents trial courts from imposing economic sanctions upon litigants for exercising the constitutional right to trial. *McKelvie v Mt Clemens*, 193 Mich App 81, 84; 483 NW2d 442 (1992). Exceptions to the rule are to be narrowly construed. *Spectrum Health v Grahl*, 270 Mich App 248, 253; 715 NW2d 357 (2006).

MCR 2.114 provides in relevant as follows:

(D) The signature of an attorney or party, whether or not the part is represented by an attorney, constitutes a certification by the signer that

(1) he or she has read the document;

(2) to the best of his or her knowledge, information, and belief formed after a reasonable inquiry, the document is well grounded in fact and warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(E) If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not access punitive damages.

(F) In addition to sanctions under this rule, a party pleading frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

MCR 2.625(A)(2) grants a court the discretion to award costs under MCL 600.2591 where the court finds, on a party's motion, that an action or defense was frivolous. MCL 600.2591 provides as follows:

(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with

the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

"To determine whether sanctions are appropriate under [MCL 600.2591], it is necessary to evaluate the claims and defenses at issue at the time they were made." *In re Costs and Attorney Fees*, 250 Mich App 89, 94; 645 NW2d 697 (2002). We therefore examine plaintiff's claims at the time they were made to the trial court below.

## A. FORCIBLE EJECTMENT AND UNLAWFUL DETAINER

MCL 600.2918 provides that "[a]ny person who is ejected or put out of lands or tenements in a forcible and unlawful manner . . . is entitled to recover 3 times the amount of his or her actual damages . . . ." This statute is designed to prohibit a landlord's resort to self-help remedies, regardless of whether the tenant was in rightful possession of the premises. See *Gallant v Miles*, 200 Mich 532; 166 NW 1009 (1918). To that end, no violation of MCL 600.2918 occurs when the owner acts pursuant to court order. MCL 600.2918.

At the time that plaintiff filed this action,[6] it knew that it had been evicted pursuant to two eviction orders, one issued on February 21, 2013 and the other on August 13, 2013. Plaintiff also knew that the district court had declared that the bank was entitled to possession of the building and had declared all lease agreements between plaintiff and Black null and void. Plaintiff's assertion in its complaint that it was evicted "without a court order and without notice" was devoid of legal merit and factually untrue at the time, as discussed above. Further,

---

[6] Plaintiff later amended its complaint in this action to add a request for treble damages regarding its trespass claim, to expand upon its allegations with regard to its abuse of process and tortious interference with business relationships and expectancies claim, and to add a claim for conversion.

although plaintiff alleged that it was forcefully evicted by threats, commands, and orders, the record does not support that contention.  The trial court properly found this claim to be frivolous.

## B.  TRESPASS

"Trespass is an invasion of the plaintiff's interest in the exclusive possession of his land." *Terlecki v Stewart*, 278 Mich App 644, 653-654; 754 NW2d 899 (2008).  In order to recover for trespass in Michigan, a plaintiff must prove an intentional, "unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Id*. at 654.

At the time plaintiff filed its complaint in the current matter, it knew that the district court had issued an order holding that Citizens Bank was entitled to possession of the property. Plaintiff was also aware that its lease with Black had been declared null and void and that Black had been ordered to vacate the building and surrender possession to Citizens Bank on or before December 31, 2012.  Thus, at the time it filed its complaint in this matter, plaintiff knew that it did not have exclusive possession of the premises and that defendants' entry was authorized by court order.  The trial court did not err by finding this claim to be frivolous.

## C.  ABUSE OF PROCESS

"To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior motive and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v Dozorc*, 412 Mich 1, 30; 312 NW2d 585 (1981).  To show an ulterior motive, plaintiff "must allege more than an improper motive in properly obtaining process." *Dalley v Dykema Gossett*, 287 Mich App 296, 322; 788 NW2d 679 (2010).  "[A] plaintiff making out a claim for abuse of process must allege a use of process for a purpose outside of the intended purpose and must allege with specificity an act which itself corroborates the ulterior motive." *Young v Motor City Apartments Ltd*, 133 Mich App 671, 681; 350 NW2d 790 (1984).

Plaintiff alleged that defendants "abused the civil procedural process by using it for their ulterior motives and/or purposes to give the Plaintiff no notice and to cause it degradation, vexation, humiliation, embarrassment and damage to its reputation in the profession and the community where its name and family are well known."  The trial court correctly pointed out that plaintiff's amended complaint lacked sufficient facts to establish any ulterior motive or an abuse of process.  On its face, the bank's motive for obtaining the eviction order was to regain possession of the property securing a promissory note that was in default.  The trial court therefore did not err by finding this claim to be frivolous.

## D.  TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP AND EXPECTANCY

Plaintiff alleged in its amended complaint that "[d]efendants [sic] intentional and improper interference by their aforesaid ex parte and other conduct in executing this illegal writ of eviction on this Plaintiff caused a disruption or termination of contacts and contracts in the

business relationships and expectations of the Plaintiff and the clients who depended on her for representation."[7] The elements of a claim of tortious interference with a business relationship and expectancy are "the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." *Dalley*, 287 Mich App at 323.

The "intentional interference" element requires that plaintiff show that defendants acted both intentionally and either improperly or without justification. *Id*. This Court has refused to impose liability "where a defendant's actions were not per se wrongful and were motivated by legitimate personal and business reasons rather than by a desire to interfere with the plaintiff's contractual or business relationship." *Boneli v Volkswagen of America, Inc*, 166 Mich App 483, 499; 421 NW2d 213 (1998). The records before us establish that a legitimate business reason was the motivating factor underlying the foreclosure and eviction, i.e., to regain possession of the property because of the nonpayment of two promissory notes, one of which was secured by a mortgage on the law office building. At the time plaintiff filed its amended complaint, plaintiff did not allege that any defendants were motivated by a desire to interfere with its business or contractual relationships; rather, it merely alleged that defendant's conduct in seeking eviction was "intentional." Mere conclusory statements, unsupported by factual allegations, are insufficient to state a cause of action. *Churella v Pioneer State Mut Ins Co*, 258 Mich App 260, 272; 671 NW2d 125 (2003). The trial court did not err by finding this claim to be frivolous.

## E. DEFAMATION

To establish a defamation claim, a plaintiff must prove the existence of

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. [*Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005).]

"A plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory." *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 263; 833 NW2d 331 (2013).

Here, plaintiff does not identify any oral or written statement made by any defendant. Rather it alleged that defendants' conduct in executing the writ and "dumping" plaintiff's records and personal property in the parking lot constituted a "clear derogatory statement." Even if these actions constitute a statement or statements (for which contention plaintiff has provided no

---

[7] Plaintiff's use of the terminology, "*Plaintiff* and the clients who depended on *her* representation" (emphasis added) is telling indeed, and provides further support for this Court's conclusion that it should treat "plaintiff" and Black (i.e., "her") as one.

authority), plaintiff's complaint and amended complaint did not explain how this "statement" was "false," inasmuch as plaintiff was in fact being evicted. Further, plaintiff does not allege that any third parties witnessed the alleged "statement;" rather, plaintiff's complaint and amended complaint allege only that plaintiff's property was placed in the parking lot in a manner that would allow third parties to see it. The trial court did not err by finding this claim to be frivolous.

## F. CONVERSION

Common law conversion involves any distinct act of dominion wrongfully exerted over another's property in denial or inconsistent with their rights." *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 351-352; 871 NW2d 136 (2015). A claim for statutory conversion adds the requirement that "someone alleging conversion . . . must show under MCL 600.2919a(1)(a) that the defendant employed the converted property for some purposes personal to the defendant's interests, even if the purpose is not the object's ordinarily intended purpose." *Id*. at 353 (internal quotation marks and citation omitted).

The trial court correctly found that placing plaintiff's personal property outside during the eviction does not support a claim of conversion. Removing the property from the building was not inconsistent with plaintiff's rights because plaintiff had no continuing right to possession of the property. Further, as the trial court also found, plaintiff's amended complaint contained no allegation that any of plaintiff's property was unaccounted-for or damaged. Therefore, plaintiff's claim for conversion lacked legal merit and the trial court properly found this claim to be frivolous.

## 7. REASONABLENESS OF FEES

Finally, plaintiff contends that the amount of attorney fees awarded to each defendant was punitive and excessive. "Where the amount of attorney fees is in dispute each case must be viewed in light of its own particular facts. There is no precise formula for computing the reasonableness of an attorney's fees." *Crawley v Schick*, 48 Mich App 728, 737; 211 NW2d 217 (1973). The party claiming attorney fees bears the burden of proving that the requested attorney fees were incurred and that they are reasonable. *Reed*, 265 Mich at 165-166. To determine the reasonableness of a fee, the following factors should be considered: "(1) the professional standing and the experience of the attorney; (2) the skill, time and labor involved, (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." *Id*. Additionally, the trial court should consider the factors elucidated in the Michigan Rules of Professional Conduct. See MRPC 1.5(a); *Smith v Khouri*, 481 Mich 519, 529; 751 NW2d 472 (2008).

We conclude that the trial court did not err when it awarded $10,399.88 in attorney fees to the Ramsey defendants. The trial court orally indicated at the summary disposition hearing that it was awarding the Ramsey defendants attorney fees and costs, and informed plaintiff that it could review and object to the reasonableness of the fees, at which time the Ramsey defendants would have the burden of proving the reasonableness of their fees. After an extended colloquy with the trial court, Black, acting as counsel for plaintiff, stated that she would "like to get back

-11-

to the Court" about having a hearing on attorney fees. The trial court then entered an order awarding the Ramsey defendants' requested amount of fees. Although plaintiff moved the trial court for reconsideration of its grant of summary disposition and grant of sanctions against it, it never challenged the amount of fees awarded to the Ramsey defendants or requested that a hearing on the reasonableness of the fees be held. We therefore conclude, under the circumstances of this case, that the trial court did not err by determining that no factual dispute existed requiring a further evidentiary hearing on the reasonableness of the fees requested by the Ramsey defendants, and, given plaintiff's choice to decline to object to amount of the fees or request a hearing on reasonableness, that the trial court did not abuse its discretion in determining that the billed items were reasonable when the documentation submitted by the Ramsey defendants, including itemized billing statements with descriptions of the work performed, supported that the award was reasonable. See *Kernen v Homestead Development Co*, 252 Mich App 689, 692; 653 NW2d 634 (2002) (stating that failure to request a hearing on the reasonableness of an attorney fee award constitutes forfeiture of the issue).

With regard to First Merit Bank, Butzel Long, and O'Malley, the trial court held a hearing to review the reasonableness of the requested fees. Butzel Long and O'Malley explained during the motion hearing that the $56,814 fee they requested was accumulated because they had additional issues to defend, and because their counsel also became co-counsel for (and took a lead role) in the defense of First Merit Bank[8] and had been required to review "thousands of documents from the underlying litigation." They also argued that the time spent on the case was reasonable and necessary. The trial court concluded, after reviewing the bills, attachments, and pleadings, that the hourly rate of $260 was reasonable and that plaintiff's objections (which had focused on the hourly rate) did not require discussion of additional factors. We conclude that the trial court did not abuse its discretion in making this award to Butzel Long and O'Malley.

With regard to the fees awarded to First Merit Bank, the trial court awarded it $15,074 in attorney fees under the offer of judgment rule,[9] or alternatively $22,607 because plaintiff's

---

[8] It thus appears, although not explicitly stated by the trial court, that some of the attorney fees awarded to Butzel Long and O'Malley (as recompense for the fees charged them by their counsel) may have resulted from their counsel's co-representation of First Merit Bank. While it would perhaps have been advisable for the trial court to clarify the apportionment of the award, we conclude ultimately that the totality of the award was within the trial court's discretion, as all defendants were entitled to an award of attorney fees incurred in defending plaintiff's frivolous claims.

[9] First Merit Bank had made an offer to plaintiff to stipulate to the entry of a judgment in plaintiff's favor for $750. Plaintiff counteroffered with an offer to stipulate to the entry of a judgment in its favor for $750,000. Plaintiff's claims were ultimately dismissed; thus, plaintiff was liable for First Merit Bank's actual costs, including attorney fees, in defending the action after the offer of judgment was made. See MCR 2.405. The amount is less than the amount awarded for frivolousness because the offer of judgment rule does not provide for the award of attorney fees for work performed before the rejection of the offer of judgment. Plaintiff does not

claims were frivolous. The bulk of the motion hearing on this issue was taken up with discussion of the offer of judgment rule. However, the trial court did hear testimony related to what work was performed by O'Malley on behalf of First Merit Bank, in contrast to what work was performed by Butzel Long and O'Malley in defending themselves, including that information had been shared between co-counsel in order to reduce costs and not "reinvent the wheel." The trial court also made the determination that hourly rates charged by O'Malley and Butzel Long were reasonable. The trial court ultimately stated that the attorney fees requested by First Merit Bank were reasonable for the same reasons that the fees requested by O'Malley and Butzel Long were reasonable. On the record before this Court, we conclude that the trial court did not abuse its discretion in determining that the award of attorney fees to First Merit Bank was reasonable.

Affirmed. As prevailing parties, defendants may tax costs. MCR 7.219(A).

/s/ Mark T. Boonstra
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola

---

challenge this lesser amount; therefore, in the event we were to find the sanctions to First Merit Bank to be unwarranted, plaintiff would still owe the lesser amount.