# STATE OF MICHIGAN

# COURT OF APPEALS

ALEXANDRA PEW,

Plaintiff-Appellant,

v

MICHIGAN STATE UNIVERSITY,

Defendant-Appellee.

FOR PUBLICATION
October 21, 2014
9:25 a.m.

No. 317727
Court of Claims
LC No. 12-000157-MZ

Before: METER, P.J., and WHITBECK and RIORDAN, JJ.

PER CURIAM.

Plaintiff, Alexandra Pew, appeals as of right the trial court's order granting summary disposition on governmental immunity grounds in favor of defendant, Michigan State University (the University), under MCR 2.116(C)(7). Pew fell through a sixth-story window at Case Hall on the University's campus. The trial court held that the public building exception to governmental immunity did not apply because Case Hall was not a public building when Pew was injured. We affirm.

## I. FACTS

## A. BACKGROUND FACTS

At around 3:00 a.m. on March 25, 2012, Pew, who was then a high school student, and her friends Kevin Watroba and Kasey Gardiner visited their friend Jason Matney at the University. In a written statement, Watroba indicated that Gardiner drove the group to the University, where they met Matney at a fraternity house. From the fraternity house, the group went to Matney's residence at Case Hall.

Watroba indicated that Pew and Gardiner were "goofing around" and "acting silly." In her statement, Gardiner indicated that she and Pew were hiding behind a pillar. Gardiner was between the pillar and the wall, and Pew was between the pillar and the window. Gardiner saw the glass shatter, and Pew fall through the window. Watroba indicated that Pew had been sitting on "the ledge thing," got up, and had her back against the window. Watroba indicated that Pew "suddenly . . . just fell backwards out the window."

-1-

In an affidavit, Sharon Potter, the assistance facilities manager for Case Hall, indicated that students and guests could only access the residential areas of the hall by swiping a key card. At her deposition, Potter testified that the lower three floors of Case Hall contain administrative offices, a cafeteria, and classrooms, and are open until 12:00 .a.m. According to Potter, Case Hall is closed from 12:00 a.m. to 6:00 a.m. and students must use their key card to enter the building.

Sean Addley, the night receptionist coordinator, testified that Case Hall has two sets of doors and there is a short distance between Case Hall's outer doors and inner doors. According to Addley, between 12:00 a.m. and 6:00 a.m., a night receptionist sits behind the inner doors. A student resident must pass his or her key card to the receptionist through a slot. The receptionist verifies that the student is a resident before opening the inner door. If the student resident has a guest, the resident must fill out a visitor verification card and give it to the receptionist. The receptionist then takes the guest's identification and places it in a box. The receptionist will allow up to three guests to enter with the student resident. Matney testified at his deposition that the night receptionist followed this procedure on the night that Pew was injured.

## B. PROCEDURAL HISTORY

On December 19, 2012, Pew filed a complaint against the University, alleging that it had violated its duty to repair and maintain the building. Pew contended that the public building exception to governmental immunity applied and, therefore, the University was not entitled to governmental immunity. On February 5, 2013, the University moved for summary disposition on the basis that the public building exception did not apply because Case Hall was not open to the public. In response, Pew contended that portions of Case Hall are open to the public without restriction and, therefore, Case Hall is a public building. Pew also contended that the vestibule was open all night, also rendering Case Hall a public building.

At the July 10, 2013 hearing on the motion, the University contended that the vestibule in this case was similar to the courtesy phone area in *Maskery v Univ of Mich Bd of Regents*,[1] in which the Michigan Supreme Court held that a dormitory building was not a public building because it was not open to the public. The University contended that Case Hall was closed when Pew was injured. Pew contended that *Maskery* did not apply because Case Hall was not entirely closed to the public. Pew contended that this Court's decision in *Tellin v Forsyth Twp*[2] provided that if any portion of a building is open to the public, the entire building is open to the public. On that basis, Pew contended that she was injured in a public building because Case Hall's vestibule was open to the public when she was injured.

The trial court reasoned that *Tellin* was distinguishable and concluded that *Maskery* applied because the public did not have access to Case Hall at the time that Pew was injured. The trial court therefore granted the University's motion for summary disposition.

---

[1] *Maskery v Univ of Michigan Bd of Regents*, 468 Mich 609; 664 NW2d 165 (2003).

[2] *Tellin v Forsyth Twp*, 291 Mich App 692; 806 NW2d 359 (2011).

## II. PUBLIC BUILDING EXCEPTION TO GOVERNMENTAL IMMUNITY

### A. STANDARD OF REVIEW

This Court reviews de novo the trial court's decision on a motion for summary disposition.[3] A defendant is entitled to summary disposition under MCR 2.116(C)(7) if the plaintiff's claims are barred because of immunity granted by law.[4] The moving party may support its motion with affidavits, depositions, admissions, or other documentary evidence that would be admissible at trial.[5] We must consider this evidence and determine whether it indicates that the defendants are entitled to immunity.[6] We consider the contents of the plaintiff's complaint to be true, unless contradicted by the documentary evidence.[7] If reasonable minds could not differ on the legal effects of the facts, whether governmental immunity bars a plaintiff's claim is a question of law.[8]

### B. LEGAL STANDARDS

Generally, the governmental immunity act provides broad immunity from tort liability to governmental agencies, officials, or employees who exercise or discharge a governmental function.[9] However, MCL 691.1406 provides that "[g]overnmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public." The public building exception to governmental immunity applies if the plaintiff shows five elements:

> (1) a governmental agency is involved, (2) the public building in question was open for use by members of the public, (3) a dangerous or defective condition of the public building itself exists, (4) the governmental agency had actual or constructive knowledge of the alleged defect, and (5) the governmental agency failed to remedy the alleged defective condition after a reasonable period or failed to take action reasonably necessary to protect the public against the condition after a reasonable period.[10]

---

[3] *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008).

[4] *Odom*, 482 Mich at 466.

[5] *Id.*; MCR 2.116(G)(5), (6).

[7] *Odom*, 482 Mich at 466.

[8] *Snead*, 294 Mich App at 354.

[9] MCL 691.1401 *et seq.*; *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 595; 363 NW2d 641 (1984); *Jones v Bitner*, 300 Mich App 65, 74-75; 832 NW2d 426 (2013).

[10] *Kerbersky v Northern Mich Univ*, 458 Mich 525, 529; 582 NW2d 828 (1998).

"When determining the public's access, we analyze the building itself, *not* the specific accident site within the building."[11]

## C. APPLYING THE STANDARDS

The parties dispute only the second element of the public building exception: whether Case Hall was "open for use by members of the public." Relying on *Tellin*, Pew contends that the building was open for use by members of the public because (1) the time of the day the accident occurred was irrelevant, or (2) even if the time of day were to be relevant, Case Hall's vestibule was open for use by members of the public when Pew was injured. We disagree with both of Pew's arguments.

### 1. TIMING OF THE INJURY

Pew asserts that the time of day was irrelevant for the purposes of determining whether Case Hall was a public building. Pew contends that the *Maskery* Court's statement that courts should consider the timing of a plaintiff's injury to determine whether a building was open to the public was dictum. We conclude that principles of stare decisis require us to consider the timing of Pew's injury.

Principles of stare decisis require us to reach the same result in a case that presents the same or substantially similar issues as in a case that another panel of this Court has decided.[12] However, dictum does not constitute binding authority.[13] Dictum is a judicial comment that is not necessary to the decision in the case.[14] But if a court intentionally addresses and decides an issue that is germane to the controversy in the case, the statement is not dictum even if the issue was not decisive.[15]

MCL 691.1406 provides that governmental agencies owe a duty to repair and maintain public buildings "*when open for use* by members of the public."[16] The Michigan Supreme Court in *Maskery* noted that buildings that are open during some periods of the day, such as courthouses and athletic facilities, may be closed to the public during other periods of the day.[17] The *Maskery* Court opined that an accident occurring when a building that is periodically open to

---

[11] *Brown v Genessee Co Bd of Comm (After Remand)*, 464 Mich 430, 435; 628 NW2d 471 (2001).

[12] MCR 7.215(C)(2); *WA Foote Hosp v City of Jackson*, 262 Mich App 333, 341; 686 NW2d 9 (2004).

[13] *Cheron, Inc v Don Jones, Inc*, 244 Mich App 212, 216; 625 NW2d 93 (2000).

[14] *Carr v City of Lansing*, 259 Mich App 376, 383-384; 674 NW2d 168 (2003).

[15] *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 563; 741 NW2d 549 (2007).

[16] Emphasis added.

[17] *Maskery*, 468 Mich at 619.

the public was closed would fall outside the public building exception.[18]  The Michigan Supreme Court's statement was not necessary to the decision in that case because the residence hall at issue in *Maskery* was always closed to the public.[19]  In *Tellin*, this Court recognized that the *Maskery* court addressed this point "arguably in dictum[.]"[20]  However, the *Tellin* court then adopted the Michigan Supreme Court's statement and applied it in that case.[21]

We conclude that, regardless of whether the Michigan Supreme Court's statement in *Maskery* was dictum, principles of stare decisis require us to follow this Court's decision in *Tellin*.  In *Tellin*, this Court considered the time that the plaintiff was injured in order to determine whether the building was open to the public.  This Court's discussion of the timing of the incident was certainly germane to the issue in *Tellin*, even if it was not decisive of whether the building was a public building.  Accordingly, we conclude that we must consider whether Case Hall was open to the public *at the time* that Pew was injured.

## 2.  CASE HALL WAS NOT A PUBLIC BUILDING WHEN PEW WAS INJURED

Pew contends that even if this Court considers the timing of Pew's injury, the trial court erred because Case Hall's vestibule was open to the public when Pew was injured and, therefore, Case Hall was a public building because a portion of it was open to the public.  We conclude that Case Hall was not open to the public, despite the fact that persons could enter the vestibule.

In *Maskery*, the Michigan Supreme Court held that a residence hall at the University of Michigan was not subject to the public building exception because it was continuously locked and not "open for use by members of the public."[22]  The plaintiff slipped and fell while traveling away from a courtesy phone after requesting that her daughter, a college student, let her into the Betsy Barbour Residence Hall on the University of Michigan's Ann Arbor campus.[23]  Visitors could access the residence "only by using the courtesy phone to contact a resident, who then could unlock the door to allow entry."[24]

The Court reasoned that, "[t]o determine whether a building is open for use by members of the public, the nature of the building and its use must be evaluated."[25]  The Court held that a building is not open to the public if the government "has restricted entry to the building to those

---

[18] *Id.*

[19] See *id.* at 620.

[20] *Tellin*, 291 Mich App at 709.

[21] See *id.* at 710 ("At any time of the day the public was freely permitted to access the area under the roof overhang where the I-beam configuration was located to use the drop box.")

[22] *Maskery*, 468 Mich at 610-611.

[23] *Id.* at 611.

[24] *Id.* at 611-612.

[25] *Id.* at 618.

persons who are qualified on the basis of some individualized, limiting criteria of the government's' creation[.]"[26]

In *Tellin*, this Court held that Forsyth Township was not entitled to governmental immunity when an I-beam dislodged from the K.I. Sawyer Learning Center and fell on the plaintiffs.[27] The Learning Center included a library and had a one-unit living area and a single main entrance.[28] The Learning Center had a 24-hour drop box for library books located under the roof overhang near the main entrance.[29] At around 8:00 p.m., the 13-year-old plaintiff went to the Learning Center to stand under the roof overhang near the entrance to wait for her mother to pick her up.[30] The plaintiffs' friend swung around an I-beam, which dislodged and fell on the plaintiffs, injuring them.[31]

We concluded that the public building exception to governmental immunity applied because "the exterior area where the incident occurred was open to the public, even though the interior of the Learning Center itself was closed when the incident occurred."[32] We reasoned that the test provided in *Maskery* focused on the intended use of the building, not the building's hours of operation.[33] We concluded that the Learning Center was intended as an area for the public to access to drop off books 24 hours a day.[34]

Here, Pew contends that, under *Tellin*, Case Hall was open to the public because members of the public could access the vestibule 24 hours a day. However, the relevant question under *Maskery* is whether the University restricted access to the building to persons qualified to enter: or, in other words, whether there was a "general right of entry" into the building.[35] Simply because the public may access the building for some limited purpose—such as to deliver mail and food or to seek entry deeper into the building—does not render a building open to the public.[36]

---

[26] *Id.*

[27] *Tellin*, 291 Mich App at 693-694.

[28] *Id.* at 694

[29] *Id.* at 696.

[30] *Id.*

[31] *Id.*

[32] *Id.* at 709.

[33] *Id.* at 710.

[34] *Id.*

[35] See *Maskery*, 468 Mich at 618 n 9.

[36] See *id.* at 620 n 10.

We conclude that this case is distinguishable from *Tellin*. In *Tellin*, this Court opined that the hours that the building was open were not determinative to whether the building was open to the public. Rather, this Court applied the test in *Maskery* and concluded that the Learning Center was open to members of the public because the Learning Center invited members of the public to drop their books off in the building's entrance location 24 hours a day. Accordingly, the public had an unlimited, and in fact an invited, general right of entry to the building 24 hours a day.

Here, though people may enter the vestibule—the small space between Case Hall's inner and outer doors—24 hours a day, the sole purpose of the vestibule between the hours of 12:00 a.m. and 6:00 a.m. is to restrict access to the remainder of the building. That the public could enter the area between Case Hall's outer and inner doors between the hours of midnight and 6:00 a.m. did not give the public a general right of entry to Case Hall. To the contrary, the evidence in this case indicates that public access to Case Hall was available only to residents and guests between those hours.

In other words, the University restricted entrance into Case Hall "to those persons who were qualified on the basis of individualized, limiting criteria—in this case, permission from a tenant."[37] Case Hall was no more a public building between the hours of 12:00 a.m. and 6:00 a.m. than was the residence hall in *Maserky*. Here, the residents' guests entered the vestibule to gain access to the building; in *Maserky*, the residents' guests entered the area of the courtesy phone to gain access to the building. In both cases, the building was restricted to those persons who had a qualified right to enter, despite the fact that people could enter the vestibule to seek entrance into the building.

We conclude that Case Hall was not a public building for the purposes of the public building exception to governmental immunity. At the time that Pew entered the building, entrance into the building was restricted to residents and their guests. The public did not have a general right of entry to Case Hall when Pew was injured. Because the public building exception applies to public buildings "*when open for use* by members of the public," we conclude that the trial court properly granted summary disposition in this case.

### III. CONCLUSION

We conclude that Case Hall was not a public building for the purposes of the public building exception to governmental immunity because, at the time Pew was injured, Case Hall was not open to the public.

We affirm.

/s/ Patrick M. Meter
/s/ William C. Whitbeck
/s/ Michael J. Riordan

---

[37] See *id*. at 620.