*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TERESE ALLEN, ATLAS VALLEY GOLF AND
COUNTRY CLUB, INC., CYNTHIA BEEBE,
DAVISON COUNTRY CLUB, KENNY
HUBBARD, GAIL HUBBARD, IMA
RECREATION ASSOCIATION, TIM KLEINDL,
APRIL KLEINDL, JULIA NEVILLE, JOHN
PAVLICK, CAITLIN PAVLICK, TRACEY
PLUMMER, and COREY ROBINSON,

   Plaintiffs-Appellants,

and

BRENT OSKEY, HANNI OSKEY, LAWRENCE
PETE, JESSICA PETE, and EDWARD WELCH,

   Plaintiffs,

v

VILLAGE OF GOODRICH,

   Defendant/Cross-Plaintiff-Appellee,

and

GENESEE COUNTY DRAIN COMMISSIONER
DIVISION OF SURFACE WATER
MANAGEMENT,

   Defendant/Cross-Defendant-Appellee,

and

GENESEE COUNTY DRAIN COMMISSIONER
DIVISION OF WATER AND WASTE SERVICES,

UNPUBLISHED
April 25, 2024

No. 359732
Genesee Circuit Court
LC No. 14-103184-NZ

-1-

Defendant/Cross-Defendant,

and

GOODRICH COUNTRY CLUB, INC.,

Defendant-Appellee.

Before: GADOLA, P.J., and PATEL and MALDONADO, JJ.

PER CURIAM.

Plaintiffs-appellants, Terese Allen, Atlas Valley Golf and Country Club, Inc., Cynthia Beebe, Davison Country Club, Kenny Hubbard, Gail Hubbard, IMA Recreation Association, Tim Kleindl, April Kleindl, Julia Neville, John Pavlick, Caitlin Pavlick, Tracey Plummer, and Corey Robinson, appeal by right the circuit court's orders granting summary disposition pursuant to MCR 2.116(C)(7) (statute of limitations) with respect to the claims brought by plaintiffs Atlas Valley Golf and Country Club, Inc., Davison Country Club, and IMA Recreation Association (collectively, the business plaintiffs) against defendants, Village of Goodrich, Genesee County Drain Commissioner Division of Surface Water Management, and Goodrich Country Club, Inc.; granting summary disposition pursuant to MCR 2.116(C)(7) (governmental immunity) with respect to the claims brought by plaintiffs Allen, Beebe, Kenny Hubbard, Gail Hubbard, Tim Kleindl, April Kleindl, Neville, John Pavlick, Caitlin Pavlick, Plummer, and Robinson (collectively, the individual plaintiffs) against the Village; granting summary disposition pursuant to MCR 2.116(C)(7) (governmental immunity) with respect to the claims brought by plaintiffs Allen, Beebe, Tim Kleindl, April Kleindl, Neville, John Pavlick, Caitlin Pavlick, and Plummer against the Drain Commissioner; and granting summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact) with respect to most of the plaintiffs' claims against defendant Goodrich Country Club.[1]  Later, the trial court separately granted summary disposition with respect to the claims of the Hubbards and Robinson against the Drain Commissioner under MCR 2.116(C)(7) (governmental immunity), and it denied plaintiffs' motion for reconsideration of the initial order granting summary disposition.  We affirm in part, reverse in part, and remand for additional proceedings.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case involves the flooding of the properties along the Goodrich Millpond and Kearsley Creek, which are downstream of the millpond and into which the Watkins Wheelock Drain drains. The drain was built in the late 1800s and substantially rebuilt and altered between 1950 and 1951.

---

[1] The Drain Commissioner failed to move for summary disposition against the Hubbards and Robinson, and the circuit court did not grant summary disposition with respect to the claims of those plaintiffs.  The court also did not grant summary disposition with respect to the Petes' claims against the Goodrich Country Club.

As early as 1994, the business plaintiffs were reporting excessive downstream water flow. In 1996, the Village's council resolved to petition the Drain Commission to improve the Watkins Wheelock Drain, but the Drain Commission discovered that the petition concerned a private drain over which the Commission lacked easements. In 2008, the Village adopted another petition for the Drain Commission to take over 110 feet of drain, but again, the drain was a private drain. Plaintiffs alleged that they suffered damage from storm water on the following dates: July 27 and 28, 2011; May 3 to 9, 2012; April 1 to 3, 2013; April 18 to 25, 2013; June 18, 2013; June 27 to 30, 2013; April 1 to 9, 2014; and July 7, 2014. Plaintiffs' individual claims differ, but each plaintiff experienced flooding on at least one of those dates.

Following discovery, the governmental defendants moved for summary disposition pursuant to MCR 2.116(C)(7), asserting that plaintiffs had failed to establish elements of the sewage-disposal-system-event exception to governmental immunity, including that the defect was a substantial proximate cause of plaintiffs' flooding events. The Goodrich Country Club moved for summary disposition under MCR 2.116(C)(10), also asserting that plaintiffs could not establish that its actions had caused plaintiffs' flooding. Instead, the defendants argued that heavy rains on the days in question and other factors had caused the flooding. In response to defendants' causation arguments, plaintiffs relied on an engineering report and two affidavits of experts.

Although the parties offered a variety of other arguments, the trial court based its decision primarily on issues of governmental immunity and proximate cause. The court noted that MCL 600.5805(10) provided that the limitations period for injury to person or property was three years from the time of injury. It held that, because the business plaintiffs' claims began more than three years before the action was filed, the statute of limitations barred their claims.

The court then considered the application of the sewage-disposal-system-event exception to governmental immunity pursuant to the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. The court opined that the existence of a defect did not, standing alone, demonstrate that the defect proximately caused plaintiffs' injuries. Considering the individual plaintiffs' claims against the Drain Commissioner, the trial court held that plaintiffs had failed to demonstrate a factual issue regarding whether the drain system was a substantial proximate cause of the flooding events. It noted that affidavits of plaintiffs' experts had been filed after the motions for summary disposition, did not address contributing factors to the case, and did not exclude other factors that could have contributed to the flooding. Considering plaintiffs' claims against the Goodrich Country Club, the court opined that "the expert opinion affidavits again falter." The affidavits did not exclude any of the numerous other hypothetical factors that could have contributed to plaintiffs' flooding problems[2], and plaintiffs could not rely on multiple, competing theories of flooding.

Following several motions for summary disposition, the trial court ultimately dismissed the business plaintiffs' claims as barred by the statute of limitations; granted summary disposition on the individual plaintiffs' claims against the Drain Commissioner; dismissed the claims by all

---

[2] Defendants did not, however, identify the supposed other contributing causes or provide any evidentiary support that they were a, much less a substantial, proximate cause of the flooding events.

of the individual plaintiffs against the Village; and dismissed all of the individual plaintiffs' claims (except those of the Petes) against the Country Club.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

A party is entitled to summary disposition when a claim is barred by the statute of limitations. MCR 2.116(C)(7). This Court reviews de novo whether a statute of limitations bars a claim. *Scherer v Hellstrom*, 270 Mich App 458, 461; 716 NW2d 307 (2006). Additionally, "[a] defendant is entitled to summary disposition under MCR 2.116(C)(7) if the plaintiff's claims are barred because of governmental immunity." *Pew v Mich State Univ*, 307 Mich App 328, 331-332, 859 NW2d 246 (2014).

When considering a motion under MCR 2.116(C)(7), the court must accept factual pleadings as true unless other evidence contradicts them. *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). It must consider the affidavits, pleadings, depositions, and other documentary evidence and determine whether a genuine issue of material fact exists. *Id*. at 429. If there are no questions of fact, whether the claim is barred is a matter of law, but "if a question of fact exists as to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." *Id*. at 429.

### B. STATUTE OF LIMITATIONS

As an initial matter, we note that the trial court misapplied the continuing-wrongs doctrine to the claims of the business plaintiffs.[3] As recently discussed in *Fraser Twp v Haney*, 509 Mich 18, 28-29; 983 NW2d 309 (2022), "[a] plaintiff is free to bring a new action each time a defendant commits a new violation." *Id*. at 28-29. The continuing-wrongs doctrine does not prevent a plaintiff from bringing an action for a claim that accrued during the limitations period, even if a plaintiff did not bring an action at the time of a previous injury. *Id*. at 29. Because the business plaintiffs alleged that they were damaged by the flooding in the three-year period before the plaintiffs filed their complaint, even though they had noticed the flooding many years earlier, the court erred by granting summary disposition of the business plaintiffs' claims during the limitations period. However, this Court may affirm when the lower court reaches the correct result for the wrong reason. *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003). Therefore, we will examine the court's other bases for summary disposition as applied to all plaintiffs.

---

[3] This issue is not preserved because plaintiffs did not raise their argument regarding the application of the continuing-wrongs doctrine until their motion for reconsideration. While "Michigan generally follows the 'raise or waive' rule of appellant review," *Walters*, 481 Mich at 388, we exercise our discretion to decide the issue because the question is one of law and the facts necessary for its resolution have been presented. See *Autodie, LLC v Grand Rapids*, 305 Mich App 423, 431; 852 NW2d 650 (2014).

## C. GOVERNMENT DEFENDANTS

Plaintiffs argue that they pleaded in avoidance of governmental immunity regarding the Drain Commissioner and Village because they established each element of the sewage-disposal-system-event exception, including proximate cause. We agree.

The GTLA provides "broad immunity from tort liability to governmental agencies whenever they are engaged in the exercise or discharge of a governmental function[.]" *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 595; 363 NW2d 641 (1984). Governmental functions are those that are expressly or impliedly either mandated or authorized by law. *Moraccini v Sterling Hts*, 296 Mich App 387, 392; 822 NW2d 799 (2012). A plaintiff may only sue a governmental entity in tort if the suit falls within one of the six statutory exceptions to governmental immunity. *Id*.

One of the six exceptions to governmental immunity is the sewage-disposal-system-event exception. *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 84 n 10; 746 NW2d 847 (2008). A sewage disposal system includes, in pertinent part, "storm sewers . . . and includes a storm water drain system under the jurisdiction and control of a governmental agency." MCL 691.1416(j). A party making a claim pursuant to the sewage-disposal-system-event exception must establish five elements to avoid governmental immunity:

> (a) The governmental agency was an appropriate governmental agency.
>
> (b) The sewage disposal system had a defect.
>
> (c) The governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect.
>
> (d) The governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.
>
> (e) The defect was a substantial proximate cause of the event and the property damage or physical injury. [MCL 691.1417(3).]

For the purposes of the sewer exception, " '[s]ubstantial proximate cause' means a proximate cause that was 50% or more of the cause of the event and the property damage or physical injury." MCL 691.1416(*l*). Proximate cause is distinct from cause in fact, which is the but-for type of cause. *Ray v Swager*, 501 Mich 52, 63; 903 NW2d 366 (2017). In a negligence action, a plaintiff must establish both factual cause and proximate cause. *Id*. at 64. Proximate cause concerns legal cause, which is whether the harm to the plaintiff "was the general kind of harm the defendant negligently risked." *Id*. (quotation marks and citation omitted). However, "nonhuman and natural forces, such as a fire, cannot be considered 'the proximate cause' of a plaintiff's injuries for the purposes of the GTLA." *Id*. at 72. The existence of natural forces "bear[s] on the question of foreseeability, in that they may constitute superseding causes that relieve the actor of liability if the intervening force was not reasonably foreseeable." *Id*.

Plaintiffs asserted the sewage exception to general governmental tort immunity. To establish a genuine issue of material fact on the "substantial proximate cause" element under the sewage-disposal-system-event exception to governmental immunity, a plaintiff's expert witnesses should address other possible proximate causes of flooding. In *Fingerle v Ann Arbor*, 308 Mich App 318; 863 NW2d 698 (2014), aff'd but vacated 498 Mich 910 (2015), this Court addressed the issue of proximate cause in the context of the sewage exception to the GTLA, but the Supreme Court vacated the lead opinion and adopted the concurring opinion. In that case, the plaintiff lived in a neighborhood that was prone to flooding, so in the early 1990s, the city constructed a drainage system to serve the area. *Id*. at 321. In 2002, the plaintiff constructed a finished basement in his house that included "a large egress window directly across from a private retention basin that had overflowed in past rain events." *Id*. Eight years later, a storm caused flooding in the area, and water penetrated the plaintiff's home through the egress window. *Id*.

In the concurring opinion adopted by the Michigan Supreme Court, *Fingerle v Ann Arbor*, 498 Mich at 910, the concurring judge opined that the plaintiff could not establish substantial proximate cause pursuant to the sewage-disposal-system-event exception to governmental immunity, *Fingerle*, 308 Mich App at 339 (O'CONNELL, J. concurring). The concurring judge drew attention to the "multiple causes of the rainwater in plaintiff's basement," which included "the unusually intense rainstorm, the allegedly defective relief storm sewer, and the installation of plaintiff's basement egress window." *Id*. at 340. The concurring judge noted that periodic flooding occurred in the neighborhood both before and after the city built its relief storm sewer. *Id*. The affidavits prepared by the plaintiff's expert were insufficient to establish a genuine issue of material fact regarding substantial proximate cause because "the expert [did] not address the multiple causes of the overflow and of the basement rainwater," such as the degree of flooding that has historically occurred and the egress window. *Id*. at 341. Instead, the affidavit addressed only the defects in the storm sewer. *Id*. Because there were multiple causes of the flooding, and the experts did not address the impact of those other causes, the evidence did not establish that the allegedly defective sewer was 50% or more of the cause of the plaintiff's flooding. *Id*. Accordingly, while reasonable minds might differ about whether the relief storm sewer was defective, reasonable minds could not differ about whether the plaintiff established that the relief storm sewer proximately caused the plaintiff's flooding. *Id*. at 341-342.

This case is distinguishable from *Fingerle*. First, in *Fingerle*, the sewage system was installed in the 1990s in response to complaints of flooding in the area, and the complaint essentially alleged that the city was negligent by failing to make a system as large and extensive as initially promised. *Fingerle*, 308 Mich App at 320-321. In this case, the system was built in the late 1800s then rebuilt in the early 1950s, and the community had gone up around the system and become dependent on it. The community had been alerting the city to the problems with the system since as early as 1994, and the allegations were that the government was negligent for failing to repair a system upon which the community had depended for more than a century. Second, in *Fingerle*, the plaintiff had constructed a large egress window that was facing an area that was known to have had a history of flooding, and the egress window had been identified as a contributing cause to the flooding. But in this case there is no indication that any plaintiffs made modifications to their homes that could be considered contributing proximate causes to the flooding. *Id*. at 321. To the extent that the drain commissioner testified that a walkout basement could be a contributing factor, there was no expert evidence submitted to support that bald

statement.[4]   See MCR 2.116(G)(3), compelling the moving party to support its motion with affidavits, depositions, or admissions, or other documentary evidence. Only if the moving party complies with MCR 2.116(G)(3) does the burden shift to the opposing party to respond. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 370; 775 NW2d 618 (2009). Here, the drain commissioner's speculative testimony was insufficient to meet this burden.

Finally, in *Fingerle*, there continued to be flooding in the area even after the sewage system was created, a system which the city never had a duty to erect to begin with. *Id*. at 340-341 (O'CONNELL, J. concurring). In the present case, reports of excessive downstream flow did not arise until decades after the system had been rebuilt.

In sum, *Fingerle* involved a relatively new system that had never fully solved the problem and a plaintiff complaining that the city did not do a good enough job solving a problem it had no obligation to address to begin with. Therefore, having an expert opine that the system was inadequate did not establish that the system was a substantial proximate cause without addressing other identified contributing causes, such as the large window in the plaintiff's basement. In this case, however, the area had become reliant on the system such that it was foreseeable to the city that allowing it to become inadequate would cause damage to neighboring property. Therefore, an expert's opinion that the system's deficiencies caused the damage was sufficient to survive summary disposition notwithstanding the fact that it did not address all the other possible causes in existence. Moreover, we reject the suggestion that *Fingerle* stands for the proposition that an expert must exclude any alternative explanation imaginable. Rather, the expert should address viable alternative contributing proximate causes for the flooding, which are supported by admissible evidence.

*Ray v Swager* in instructive to the interpretation of "substantial proximate cause," and, in our opinion, undermines the holding in *Fingerle* that a flooding event itself can be a contributing proximate cause for purposes of establishing liability under MCL 691.1417(3). In *Ray*, interpreting MCL 691.1407(2), the Supreme Court addressed "the role that factual and legal causation play when analyzing whether a defendant's conduct was 'the proximate cause' of a plaintiff's injuries under the GTLA." *Ray*, 501 Mich at 64-65. While *Ray* examined the meaning of "the proximate cause," the analysis is analogous and instructive. Regarding proximate cause the Court explained:

> It is not uncommon that more than one proximate cause contributes to an injury. However, under the GTLA, we have held that when assessing whether a governmental employee was "the proximate cause" of the plaintiff's injuries, a

---

[4] Defendants cite to plaintiffs' experts' reports, which state that the Village should not have issued building permits for walkout basements, as an admission that plaintiffs claim that walkout basements were a contributing proximate cause to the floods. This interpretation misreads the affidavits as a whole. The affidavits focus on the Village and Drain Commissioner's knowledge of historical flooding events, and failure to fix known drain problems. The statements regarding the walkout basements do not provide any information regarding causation; they merely opine that, given the defendants knowledge of the risk of flood, building permits should not have been issued.

court must determine whether the defendant's conduct was the one most immediate, efficient, and direct cause of the injury.

. . . "[T]he proximate cause" is not determined by weighing factual causes. Such an approach distorts the meaning of "the proximate cause" by severing it from the concept of legal causation. [*Id*. at 65-66 (quotation marks, citations, and alteration omitted).]

The Court applied a definition of proximate cause to the GTLA that it had first articulated nearly a century prior:

If a man does an act and he knows, or by the exercise of reasonable foresight should have known, that in the event of a subsequent occurrence, which is not unlikely to happen, injury may result from his act, and such subsequent occurrence does happen and injury does result, the act committed is negligent, and will be deemed to be the proximate cause of the injury. [*Id*. at 67-68 (quotation marks and citation omitted).]

Therefore, traditional proximate cause considerations apply to the GTLA, including the well-established rule that "only a human actor's breach of a duty can be a proximate cause. Consequently, nonhuman and natural forces . . . cannot be considered 'the proximate cause' of a plaintiff's injuries for the purposes of the GTLA." *Id*. at 72. Likewise, nonhuman and natural forces, like the heavy rainfalls involved in this case, cannot be a proximate cause, much less substantial proximate cause of the drain failures and flood events.

Plaintiffs produced two affidavits from experts that, within the circumstances of this case, were adequate to establish substantial proximate cause for the purposes of the GTLA. First, one of plaintiffs' experts stated that he conducted a hydrologic evaluation of the Village's stormwater system. He opined that, as a result of the modeling, the Village's addition to drainage from the Goodrich Country Club "inlets into the Watkins and Wheelock drain system and is a substantial proximate cause for flooding in the Village," which had caused damage to homes. However, the expert did not address any of the other hypothetical possible causes of flooding.

Plaintiffs also relied on a second affidavit, in which the expert opined that, though the Drain Commissioner stated that a private storm pipe operated between Ridge Road and the Watkins Wheelock Drain, the Drain Commissioner maintained the storm pipe and therefore operated the storm pipe. The expert expressed that the Village and Drain Commissioner allowed additional runoff to be directed into the pipe, which added flow to the undersized Watkins Wheelock Drain. The expert further opined that the Village allowed the Goodrich Country Club to construct a cart storage facility, which generated additional runoff, and the improvements to Ridge Road replaced the permeable gravel with impervious pavement. The expert opined that a defect exists in the "private storm pipe" Drain as both the Village and the Drain Commissioner allowed additional flow and volume into the system without performing downstream improvements to convey the additional flow and volume. The expert further opined that the Village should not have issued building permits to houses with walkout basements on three parcels considering the history of flooding. The affidavit focused on the history of flooding in the area, and knowledge of the problem by the Village and the Drain Commissioner. The experts' affidavits are sufficient to

establish that the Village and Drain Commissioner's conduct was a substantial proximate cause of the flooding events.

Defendants do not take issue with the experts' causation analysis. Instead, they argue that the affidavits are insufficient because the experts did not address other possible causes for the flooding. But plaintiffs have no obligation, through their experts, to imagine up and knock down straw possible contributing factors to the floods. Instead, it was defendants' responsibility and burden to identify other proximate causes of the flooding and produce sufficient evidence regarding these alternative causes. See MCR 2.116(G)(3). The defendants failed to provide any such evidence and cannot now claim that plaintiffs' affidavits were insufficient for not addressing alternative causes that defendants never did.

The city relies on evidence pertaining to unusually heavy rainfalls, suggesting that the rain was the proximate cause of the flooding. However, natural forces cannot be a hazard's proximate cause; rather, "these forces bear on the question of foreseeability, in that they may constitute superseding causes that relieve the actor of liability if the intervening force was not reasonably foreseeable." *Ray*, 501 Mich at 72. We are not persuaded that no rational fact-finder could conclude that it was not reasonably foreseeable that at some point in time the city would experience a higher-than-usual volume of rainfall. See *Dohany v Birmingham*, 301 Mich 30, 42; 2 NW2d 907 (1942) ("It cannot be successfully maintained that the duty of the city to care for its sewage disposal continues only during the time of normal weather and ends when there is an excessive rainfall."). While there was also evidence suggesting a correlation between flooding and homes with walkout basements, the absence of evidence suggesting that the installation of such a basement should assign responsibility to the homeowner renders this line of reasoning mere conjecture, and summary disposition cannot be granted based on conjecture. See *Ahmed v Tokio Marine America Ins Co*, 337 Mich App 1, 7; 972 NW2d 860 (2021).

Therefore, this trial court erred by granting summary disposition on the basis that the government defendants were entitled to immunity pursuant to the GTLA.

## D. GOODRICH COUNTRY CLUB

We agree with the trial court that plaintiffs have failed to put forth evidence sufficient to establish actionable wrongdoing by Goodrich Country Club.

Plaintiffs brought claims of negligence and trespass against the country club. "To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 508; 991 NW2d 230 (2022) (quotation marks and citation omitted). To establish trespass, a plaintiff must establish that there was "an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Wiggins v Burton*, 291 Mich App 532, 555; 805 NW2d 517 (2011) (quotation marks and citation omitted). When the elements of trespass are established, "the plaintiff is presumptively entitled to at least nominal damages." *Id.* (quotation marks and citation omitted).

-9-

The upstream plaintiffs are the dominant estates of the Goodrich Country Club. The owner of the lowlands "must accept surface water which naturally drains onto his land." *Le Van v Hedlund Plumbing & Heating*, 37 Mich App 271, 274; 194 NW2d 725 (1971).[5] A negligence claim may exist when the raising of a lowland causes water to flow back onto the higher property. *Id*. The downstream plaintiffs and the business plaintiffs are the servient estates of the Goodrich Country Club. "[T]he owner of the dominant estate may not, by changing conditions on his land, put a greater burden on the servient estate by increasing and concentrating the volume and velocity of the surface water." *Wiggins v City of Burton*, 291 Mich App 532, 563; 805 NW2d 517 (2011) (quotation marks and citation omitted). The unauthorized installation of a drain that causes excess waters to flow onto another's land is a trespass. *Id*. at 566.

The record has a distinct absence of evidence relevant to the country club. The section of plaintiff's brief discussing this issue does not direct us toward any such evidence; instead, it is filled with conclusory allegations without citations to the record. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *In re Warshefski*, 331 Mich App 83, 87; 951 NW2d 90 (2020) (quotation marks and citation omitted). The court cited deficiencies with the experts' affidavits, and with respect to this defendant, we agree that they were inadequate. The expert affidavit from Alan Morris criticized the village for allowing the country cub to construct a cart storage facility, but while this statement suggests negligence by the village, it does not allow an inference of wrongdoing by the country club. In his expert affidavit, Charles Morris opined that "the addition by the Village of Goodrich, Michigan of the drainage from the Golf Course and Ridge and Hegel Roads inlets into the Wheelock and Watkins drainage system is a substantial and proximate cause for flooding" within the village. Again, this statement is directed toward the government defendants, not the country club.

With this record, we cannot say that the trial court erred by concluding that plaintiffs could not establish their claims against the country club.

III. CONCLUSION

With respect to the government defendants, the trial court's order granting summary disposition is reversed. With respect to Goodrich Country Club, the trial court's order granting summary disposition is affirmed. This case is remanded for additional proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Allie Greenleaf Maldonado

---

[5] While decisions issued before November 1990 should be "considered to be precedent and entitled to significantly greater deference than are unpublished cases," this Court is not "strictly required to follow" such decisions. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (emphasis omitted).