*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NEW PRODUCTS CORPORATION,

UNPUBLISHED
February 05, 2026
11:25 AM

Plaintiff-Appellant,

v

No. 371800
Wayne Circuit Court
LC No. 21-003072-NM

BUTZEL LONG,

Defendant-Appellee.

Before: CAMERON, P.J., and M. J. KELLY and YOUNG, JJ.

PER CURIAM.

In 2008, defendant, Butzel Long (Butzel), represented plaintiff, New Products Corporations (NPC), in a quiet-title case involving a parcel of land upon which a golf course was being built that overlapped with NPC's property. After some limited communications with the city and exploration of the dispute, Butzel opined that NPC had no claim to prevent or delay the construction of the golf course on NPC's property. In a 2019 appeal, this Court stated that NPC no longer could pursue a timely claim to recover or protect their property interest but stated that "any error on counsel's part may be remedied monetarily through a malpractice action."[1] After remand from this Court,[2] NPC appeals as of right the trial court order granting Butzel's motion for summary disposition under MCR 2.116(C)(10) (no genuine dispute of material fact). We reverse and remand.

## I. FACTUAL AND PROCEDURAL HISTORY

This case arose from the events that transpired during a quiet-title case, starting in 2008, in Berrien County. This Court provided the factual background for the underlying case in *New Prods*

---

[1] *New Prods Corp v Harbor Shores BHBT Land Dev, LLC (After Remand)*, 331 Mich App 614, n 3; 953 NW2d 476 (2019) (*New Prods II*).

[2] *New Prods Corp v Butzel Long*, unpublished per curiam opinion of the Court of Appeal, issued May 18, 2023 (Docket No. 361412), p 4.

*Corp v Harbor Shores BHBT Land Dev, LLC*, 308 Mich App 638, 641-643; 866 NW2d 850 (2014) (*New Prods I*), stating:

> In 1950, Elwood and Evelyn McDorman owned a 250–foot–wide parcel of land running south from Higman Park Road to the then existing channel of the Paw River, which served as the boundary between the city of Benton Harbor (Benton Harbor) and Benton Charter Township (the Township). . . . The parcel in dispute is that part of the McDormans' land that was located in the Township before the relocation of the river, but which is now south of the relocated river.

> [NPC] owns and operates a manufacturing facility in Benton Harbor along Klock Road. In 1955, [NPC] acquired the parcel that Benton Harbor transferred to the McDormans as part of the project to relocate the river along with the disputed parcel. Benton Harbor taxed both parcels and [NPC] paid the taxes. However, the Township continued to tax the disputed parcel and listed the taxpayer of record as Frank Hoffman.

> In 1970, the Township foreclosed against Hoffman's property for unpaid taxes. The state acquired the property, but transferred it back to Hoffman in 1973. Larry and Heidi Heald acquired the property from Hoffman and his co-owners in 1991. Harbor Shores Development then purchased the disputed parcel from the Healds in 2007. As part of a large development project, Harbor Shores Development conveyed a portion of the disputed parcel to Benton Harbor and a portion to defendant Harbor Shores Golf Course, LLC (Harbor Shores Golf). Harbor Shores Golf then constructed a golf course, which included the disputed parcel.

NPC filed a claim to quiet title on the disputed parcel in September 2011. *Id.* Following a bench trial, this Court reported the findings of the Berrien Circuit Court: (1) the parcel was properly distributed to Harbor Shores through tax foreclosure; (2) NPC's claim was delayed and barred by the doctrines of laches, unclean hands, and estoppel; and (3) the Harbor Shores defendants had title to the parcel under the Market Record Title Act (MRTA), MCL 565.101 *et seq. New Prods II*, 331 Mich App at 624.

NPC appealed the Berrien Circuit Court's decision in *New Prods II*. This Court: (1) determined the Berrien Circuit Court's analysis of the tax foreclosure was inaccurate and incomplete; (2) affirmed the Berrien Circuit Court's grant of equitable relief; and (3) determined the MRTA applied and entitled the Harbor Shores defendants to summary judgment. *Id.* at 623-626, 631-635.

NPC filed this complaint, alleging legal malpractice against Butzel. In lieu of an answer, Butzel moved for summary disposition under MCR 2.116(C)(7) (dismissal appropriate under statute of repose) and MCR 2.116(C)(8) (failure to state a claim), arguing: (1) NPC's claim was untimely under the statute of repose; (2) NPC's claim was barred under the attorney-judgment rule; and (3) NPC failed to establish causation. The trial court granted summary disposition under MCR 2.116(C)(7), which this Court reversed, finding the statute of repose did not apply on the basis of the parties' agreement. *New Prods Corp v Butzel Long*, unpublished per curiam opinion

of the Court of Appeal, issued May 18, 2023 (Docket No. 361412) (*New Prods III*), pp 1-2. This Court declined to address the issues of attorney-judgment or causation, because the trial court did not address them, and remanded the case. *Id*. at 4.

On remand, Butzel moved for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing NPC failed to establish causation. Butzel relied on this Court's decision in *New Prods II*, which held the MRTA barred NPC's claim, which tolled two years after Butzel terminated its representation of NPC. NPC claimed there were disputes of fact regarding negligence and causation, citing the Berrien Circuit Court's opinion and the affidavit of its expert attorney, Steven Matta. NPC also claimed discovery was incomplete regarding its claims of malpractice.

The trial court granted summary disposition under MCR 2.116(C)(10), finding there was no dispute Butzel was not negligent, and NPC failed to demonstrate Butzel was the proximate cause of its harm. With respect to negligence, the trial court determined Matta's affidavit was factually inaccurate and Butzel acted in good faith. On causation, the trial court determined NPC hired a new attorney in 2009 but did not file its quiet-title action until 2011, establishing the application of laches to Butzel was speculative. The trial court explained NPC could have filed its complaint in 2009 when it retained new counsel but chose not to do so, making Butzel's alleged inaction not casually connected to NPC's harm. On the issue of discovery, the trial court determined Butzel's liability ended when NPC retained new counsel, demonstrating "no fair likelihood that further discovery will correct the new attorney's failure." NPC moved for reconsideration, which the trial court denied. This appeal followed.

## II. SUMMARY DISPOSITION TO BUTZEL WAS IMPROPER

NPC claims the trial court erred when it granted summary disposition under MCR 2.116(C)(10). We agree.

## A. STANDARDS OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *BC Tile & Marble Co v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010). "In making this determination, the Court reviews the entire record to determine whether defendant was entitled to summary disposition." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

Summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden,* 461 Mich at 120. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted). "When reviewing a decision on a motion for summary disposition, this Court

will not consider evidence that had not been submitted to the lower court at the time the motion was decided." *In re Estate of Rudell*, 286 Mich App 391, 405; 780 NW2d 884 (2009). "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Maiden*, 461 Mich at 121.

## B. QUESTIONS OF FACT REMAIN REGARDING WHETHER BUTZEL COMMITTED MALPRACTICE

NPC alleged Butzel committed legal malpractice.[3] "To state a claim for legal malpractice, a plaintiff must allege (1) the existence of an attorney-client relationship, (2) negligence in the legal representation of the plaintiff, (3) that the negligence was the proximate cause of an injury, and (4) the fact and the extent of the injury alleged." *Kloian v Schwartz*, 272 Mich App 232, 240; 725 NW2d 671 (2006). "As in other tort actions, the plaintiff has the burden of proving all the elements of the suit to prevail." *Charles Reinhart Co v Winiemko*, 444 Mich 579, 586; 513 NW2d 773 (1994)

For the first element: "The rendering of legal advice and legal services by the attorney and the client's reliance on that advice or those services is the benchmark of an attorney-client relationship." *Macomb County Taxpayers Ass'n v L'Anse Creuse Pub Sch*, 455 Mich 1, 11; 564 NW2d 457 (1997). "The attorney's right to be compensated for his advice and services arises from that relationship; it is not the definitional basis of that relationship." *Id*. Our Supreme Court further elaborated:

> [T]he relation of attorney and client is not dependent on the payment of a fee, nor is a formal contract necessary to create this relationship. The contract may be implied from conduct of the parties. The employment is sufficiently established when it is shown that the advice and assistance of the attorney are sought and received in matters pertinent to his profession. [*Id*. (citation omitted).]

"The second element requires proof that the defendant breached a professional standard of care." *Patel v FisherBroyles, LLP*, 344 Mich App 264, 273; 1 NW3d 308 (2022). "Stated generally, an attorney 'must only act as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances.' " *Id*., quoting *Simko v Blake*, 448 Mich 648, 650; 532 NW2d 842 (1995). "[M]ere errors in judgment by a lawyer are generally not grounds for a

---

[3] For the first time on appeal, NPC also argues Butzel failed to establish the factual basis for its motion for summary disposition, making it unpreserved. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020). "Michigan generally follows the 'raise or waive rule of appellate review." *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). NPC failed to raise the issue regarding the factual basis for Butzel's motion, thus waiving it. *Id*. Additionally, NPC failed to include this issue in its statement of questions presented. "Independent issues not raised in the statement of questions presented are not properly presented for appellate review." *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001). As such, we decline to address this issue.

malpractice action where the attorney acts in good faith and exercises reasonable care, skill, and diligence." *Id*. at 658. Thus, "[a]lthough gross errors in judgment can be actionable, mere errors in judgment by attorneys acting in good faith are not." *Estate of Mitchell v Dougherty*, 249 Mich App 668, 679; 644 NW2d 391 (2002) (quotation marks and citations omitted). "This Court recently explained that professional malpractice claims ordinarily require expert testimony to establish the applicable standard of care and that the defendant breached that standard." *Patel*, 344 Mich App at 273.

For the third element: "As in any tort action, to prove proximate cause a plaintiff in a legal malpractice action must establish that the defendant's action was a cause in fact of the claimed injury." *Charles Reinhart Co*, 444 Mich at 586. "Often the most troublesome element of a legal malpractice action is proximate cause." *Id*. "Hence, a plaintiff must show that but for the attorney's alleged malpractice, he would have been successful in the underlying suit." *Id*. (quotation marks and citation omitted). " 'In other words, the client seeking recovery from his attorney is faced with the difficult task of proving two cases within a single proceeding.' " *Patel*, 344 Mich App at 273, quoting *Charles Reinhart Co*, 444 Mich at 586.

NPC argues the trial court erred when it: (1) determined there was no dispute Butzel acted in good faith; (2) determined Butzel was not the cause of NPC's injury; and (3) granted summary disposition before discovery was complete.

## 1. QUESTIONS OF FACT REMAIN REGARDING WHETHER BUTZEL BREACHED THE STANDARD OF CARE

NPC contends the trial court improperly determined Butzel acted in good faith, despite Matta's affidavit establishing a breach of the standard of professional care and incomplete discovery. NPC does not cite which element it is contesting, but the trial court discussed good faith in the negligence and causation prongs of legal malpractice and in the attorney-judgment rule, noting the issue of good faith was "intertwined" with both prongs. However, the trial court determined Butzel acted with good faith in the negligence prong of the analysis.

NPC claims the trial court made a factual determination that Butzel acted in good faith when Butzel determined NPC had no claim to the disputed property. The trial court stated: "Thus, as to the second element of legal malpractice, negligence in the representation, [Butzel] cannot be held liable in malpractice for failing to file a complaint due to its honest and good faith belief that NPC had no claim to the disputed parcel." To establish negligence, NPC must demonstrate Butzel breached a professional standard of care, which is what an ordinary attorney of ordinary education, judgment, or skill would do under those circumstances. *Patel*, 344 Mich App at 273. Generally, professional malpractice claims now require expert testimony to establish the applicable standard of care. *Id*.

Butzel did not address this claim in its motion for summary disposition. NPC claimed Butzel was negligent for failing to file the quiet-title action in 2008 and for its mishandling of the quiet-title case. NPC argues Matta's affidavit established a question of fact on whether Butzel breached the professional standard of care. Matta stated Butzel: (1) failed to file the quiet-title complaint; (2) failed to provide its reasoning for not filing the complaint; (3) never provided NPC

"a real work product in a timely manner laying out [Butzel's] concerns;" and (4) failed to respond to Harbor Shores' counsel.

The trial court determined Matta's affidavit was factually inaccurate, because this Court never imputed malpractice to Butzel and only mentioned the issue in a footnote, making it dictum. "Dictum is a judicial comment that is not necessary to the decision in the case." *Pew v Mich State Univ*, 307 Mich App 328, 334; 859 NW2d 246 (2014). "[D]ictum does not constitute binding authority." *Id.* "But if a court intentionally addresses and decides an issue that is germane to the controversy in the case, the statement is not dictum even if the issue was not decisive." *Id.*

In *New Prods II*, 331 Mich App at 629 n 3, this Court stated: "To the extent that plaintiff blames its delay on its counsel, we note that plaintiff could have ended its relationship with its counsel and hired alternative counsel. In any event, any error on counsel's part may be remedied monetarily through a malpractice action." The issue on appeal was whether NPC was barred from asserting its property rights over the disputed parcel, making this Court's statement regarding malpractice dictum. *Pew*, 307 Mich App at 334.

While this Court's statement concerning malpractice was dictum, this Court held NPC's "silence on the title issue inequitably induced defendants' belief that the issue was resolved and that the Harbor Shores defendants justifiably relied on this belief to complete their development of the disputed parcel and related property." *New Prods II*, 331 Mich App at 629. One of NPC's claims of malpractice was Butzel not properly asserting its interests in the parcel. The Matta affidavit alleged Butzel failed to respond to the letters of Harbor Shores' legal counsel, requesting to open a dialog on the issue.

Matta also relied on the Berrien Circuit Court's opinion, which stated: "[NPC], through [] Miller, knew and was fully aware that [it] should have commenced the present action no later than September 2008, when she saw Harbor Shores begin construction on the 18th hole." The Berrien Circuit Court also stated: "Regardless of why [NPC's] prior counsel failed or refused to file a timely claim in 2008 as [NPC] repeatedly demanded, that counsel's failure is imputed to [NPC]."

Matta cited the Berrien Circuit Court's and this Court's opinions in his affidavit. The trial court never addressed Matta's reliance on the Berrien Circuit Court's opinion. Further, the trial court never addressed Matta's claims regarding Butzel's failure to provide competent representation or Butzel's reasoning for determining NPC had no claim to the disputed parcel. Even if Matta was inaccurate in his interpretation of *New Prods II*, it was improper for the trial court to decide how the factual inaccuracies impacted Matta's credibility on his opinion concerning Butzel's alleged breach of the professional standard of care. See *Pioneer State Mut Ins for Publ'n Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013) ("The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)."). Moreover, the trial court failed to explain how Matta's erroneous interpretation of *New Prods II* impacted his claims Butzel failed to adequately communicate with NPC and Harbor Shores.

The trial court focused its analysis on Butzel's good-faith belief NPC had no claim to the disputed parcel because of the tax foreclosure. The trial court cited the Berrien Circuit Court

reaching the same conclusion as Butzel for support, but admitted this Court determined the analysis was incorrect. The trial court relied on *Simko*, where our Supreme Court established the attorney-judgment rule and held: "Where an attorney acts in good faith and in honest belief that his acts and omissions are well founded in law and are in the best interest of his client, he is not answerable for mere errors in judgment." *Simko*, 448 Mich at 658. The trial court concluded Butzel "cannot be held liable in malpractice for failing to file a complaint due to its honest and good faith belief that NPC had no claim to the disputed parcel."

The trial court discarded Matta's affidavit as unreliable, which claimed Butzel did not conduct thorough research and failed to advise NPC of the tax issue. While the trial court noted the Berrien Circuit Court agreed with Butzel regarding the tax issue, Matta claimed Butzel never thoroughly researched the issue. Matta claimed Butzel provided NPC a number of reasons for not pursuing litigation, which included: (1) statute of limitations; (2) damages; (3) notice issues; and (4) "bona fide purchaser." Matta also noted Butzel never provided NPC with a written brief on the issues.

The trial court cited no evidence supporting its finding that Butzel acted in good faith and ignored Matta's affidavit, which suggested Butzel failed to properly advise NPC of the case and its issues. Even if the Berrien Circuit Court reached the same conclusion as Butzel, NPC provided evidence demonstrating Butzel did not act in good faith or with the professional standard of care when it reached its conclusion. Further, the trial court focused its findings on Butzel's failure to file the quiet-title complaint. NPC alleged multiple instances of malpractice, including Butzel's failure to file a lis pendens and failing to respond to the communication of Harbor Shores counsel. The trial court never discussed Butzel's alleged negligence for these claims. Matta's affidavit established a dispute whether Butzel's judgment was on the basis of a good-faith belief NPC had no claim to the disputed parcel.

The trial court was correct that the Berrien Circuit Court agreed with Butzel's conclusion, but Matta's affidavit established questions of fact regarding Butzel's good-faith belief regarding the position. Matta's affidavit and the Berrien Circuit Court's opinion provide evidence to contest the trial court's finding there was no dispute of fact Butzel acted in good faith. As such, the trial court erred.

### 2. QUESTIONS OF FACT REMAIN REGARDING WHETHER BUTZEL PROXIMATELY CAUSED NPC'S INJURY

NPC claims there was a dispute of fact regarding whether Butzel was the cause of its injury. For causation: "As in any tort action, to prove proximate cause a plaintiff in a legal malpractice action must establish that the defendant's action was a cause in fact of the claimed injury." *Charles Reinhart Co*, 444 Mich at 586. A law firm may not be liable for "the failure to pursue or timely file a claim where its representation of plaintiff[] had ceased before the applicable period of limitation expired on the claim." *Estate of Mitchell*, 249 Mich App at 682, see also *Boyle v Odette*, 168 Mich App 737, 745; 425 NW2d 472 (1988) (holding an attorney cannot be held liable for failing to file a claim prior to the expiration of the claim when the plaintiff hired new counsel before the expiration of the claim).

There is no dispute Butzel started representing NPC in 2008, but there is a dispute when that representation ended. However, this dispute is not material. NPC's malpractice claim concerns Butzel's representation before the December 15, 2008 letter, when Butzel noted it was not providing services for NPC. As established by this Court's and the Berrien Circuit Court's opinions, the equitable relief was premised on NPC's delay in bringing its quiet-title action, which it should have done in September 2008. There is no dispute Butzel represented NPC during the referenced time frame.

While there is evidence establishing Butzel's alleged negligence as the cause for NPC losing its claim to the disputed property, NPC was partially responsible for the delay. With respect to the Berrien Circuit Court's decision on equity, this Court determined: (1) NPC had knowledge of the construction of the golf course on the disputed parcel in March 2008; (2) NPC's silence on the issue was pivotal in Harbor Shores reaching the conclusion there was no dispute; (3) NPC's inaction from 2008 to 2011 supported Harbor Shores' belief there was no dispute; and (4) Harbor Shores justifiably relied on its belief to complete development of the golf course. *New Prods II*, 331 Mich App at 628-629. The events this Court and the Berrien Circuit Court cite supporting the equitable relief began in September 2008, which was when the parties agreed Butzel represented NPC. NPC did not retain new counsel until August 2009. In *New Prods II*, this Court was not clear on which law firm was responsible for the failure, but explained NPC's silence was a key factor in Harbor Springs concluding there was no dispute. There was evidence demonstrating Butzel was responsible for the inaction and lack of communication with Harbor Shores. However, NPC additionally claimed the delay was also a result of its "preoccupation with the bankruptcy of one of its most important clients, General Motors." *New Prods II*, 331 Mich App at 629 n 3.

There is a question of fact regarding proximate cause. While Butzel focuses on this Court's determination NPC filed its quiet-title action in 2011, after construction was complete, it ignores its actions before 2011. This Court noted Harbor's Shores' conclusion regarding the disputed parcel, stating: "Indeed, this belief could only have been enhanced by [NPC's] silence on the issue throughout the *entirety* of the construction of the 18th hole." *Id*. at 629 (emphasis added). Construction began in September 2008 when Butzel represented NPC and initially asserted NPC's claim to the disputed parcel. This Court and the Berrien Circuit Court agreed NPC should have been aware of this issue by at least May 2008. *Id*. at 268. While Butzel terminated its representation of NPC in December 2008 or early 2009, there was no dispute it was representing NPC during a portion of the time this Court and the Berrien Circuit Court referenced.

While Butzel is correct after its termination it was not the cause of NPC's harm, the equity issues the Berrien Circuit Court and this Court cite began while Butzel represented NPC. There is a question of fact whether Butzel was the proximate cause of NPC's loss of title to the disputed property. As such, the trial court erred when it granted summary disposition.[4]

---

[4] NPC further argues the trial court prematurely granted summary disposition under MCR 2.116(C)(10) because discovery was not complete. Because we find questions of fact remain, we vacate the lower court's decision to grant summary disposition, which would then reopen the question of continuing discovery. We note that NPC provided evidence through Matta's affidavit

III.  CONCLUSION

For the reasons stated above, we reverse the trial court decision and remand for further proceedings.  We do not retain jurisdiction.


/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Adrienne N. Young

---

of the contents of the depositions it sought from Butzel's attorneys.  See *Bellows v Delaware McDonald's Corp*, 206 Mich App 555, 561; 522 NW2d 707 (1994) ("This Court has held that a grant of summary disposition is premature if granted before discovery on a disputed issue is complete.")