*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEITH SMITH,

        Plaintiff-Appellee,

and

BEAUMONT HEALTH,

        Intervening Plaintiff-Appellee

v

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN, and FARM BUREAU
GENERAL INSURANCE COMPANY OF
MICHIGAN

        Defendants-Appellants,

and

MOTORISTS COMMERCIAL MUTUAL
INSURANCE COMPANY,

        Defendant-Appellee,

and

MICHIGAN ASSIGNED CLAIMS PLAN, and/or
MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

        Defendants.

FOR PUBLICATION
March 13, 2025
2:12 PM

No. 369139
Wayne Circuit Court
LC No. 21-003289-NF

Before: YOUNG, P.J., and O'BRIEN and SWARTZLE, JJ.

YOUNG, P.J., (*concurring dubitante*).

-1-

I concur dubitante in the result only. I write separately to urge our Supreme Court to consider whether the "primary purpose/incidental nature test" is consistent with the plain language of MCL 500.3114(2). I posit it is not.

The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature." *Colucci v McMillin*, 256 Mich App 88, 94; 662 NW2d 87 (2003) (citation omitted). When interpreting statutory language, the first step is to focus on the language in the statute itself. *Turner v ACIA*, 448 Mich 22, 27; 528 NW2d 681 (1995) (citations omitted). If, after review of the language of the statute, this Court determines the statute is unambiguous on its face, "the drafter is presumed to have intended the meaning plainly expressed and further judicial interpretation is not permitted." *City of Romulus v Mich Dep't of Environmental Quality*, 260 Mich App 54, 65; 678 NW2d 444 (2003), citing *Colucci*, 256 Mich App at 94.

The plain language of MCL 500.3114(2) is, as the majority relayed, "[a] person who suffers accidental bodily injury while an operator or a passenger of *a motor vehicle operated in the business of transporting passengers* shall receive the personal protection insurance benefits to which the person is entitled from the insurer of the motor vehicle." (Emphasis added.) The next subsection goes on to exempt passengers in any of the following vehicles:

(a) A school bus, as defined by the department of education, providing transportation not prohibited by law.

(b) A bus operated by a common carrier of passengers certified by the department of transportation.

(c) A bus operating under a government sponsored transportation program.

(d) A bus operated by or providing service to a nonprofit organization.

(e) A taxicab insured as prescribed in section 3101 or 3102.

(f) A bus operated by a canoe or other watercraft, bicycle, or horse livery used only to transport passengers to or from a destination point.

(g) A transportation network company vehicle.

(h) A motor vehicle insured under a policy for which the person named in the policy has elected to not maintain coverage for personal protection insurance benefits under section 3107d or as to which an exclusion under section 3109a(2) applies.

Reviewing MCL 500.3114(2) in full is essential. *TruGreen Ltd P'ship v Dep't of Treasury*, 338 Mich App 248, 257–58; 979 NW2d 739 (2021) (citing Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 167 ("[T]he whole-text canon . . . calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts."). First, the plain language of the full phrase "a motor vehicle operated in the business of" clues the reader into the object we are to focus on: the motor vehicle. This indicates that it is unnecessary to engage in an analysis of what percentage of a company's profit is generated from transporting passengers, or what the company's primary business is and

how much a motor vehicle contributes to that overall business or mission. The focus is not on the purpose of the business as a whole, but rather on the purpose of the motor vehicle.

Additionally, "operated in the business of" is akin to a regular, systematic undertaking or activity, with or without a direct profit motive. That the Legislature intended this to be the meaning of "operated in the business of," and for the focus to be on the purpose of the motor vehicle rather than the purpose of the business, is most apparent when reviewing the six exemptions from MCL 500.3114(2). For example, in § 3114(2)(a), the Legislature specifically excludes school busses from falling within § 3114(2). This is because the Legislature recognized that under the plain language of § 3114(2), one could read a school bus to be "a motor vehicle in the business of transporting passengers." This is true even where the bus is owned by a school district that is in the business of educating children, not in transporting them. The same is true for a canoe livery, § 3114(2)(d), whose business is recreational, but uses a shuttle to transport canoers to and from a destination to access a canoe.

As MAIPF points out, because the Legislature listed numerous exceptions to MCL 500.3114(2) that may not be for-profit endeavors (e.g. governmental and non-profit vehicles (§ 3114(2)(a)-(d)) and situations where the "business of transporting passengers" is not an organization's primary purpose (e.g. a canoe livery, § 3114(2)(f)), it is evident the Legislature did not intend either to be necessary for § 3114(2) to apply. Accordingly, the plain language of the statute indicates that the phrase "operated in the business of" denotes a regular or systematic activity undertaken by an entity, regardless of whether the activity generates profit for the entity.

Further, "courts must interpret statutes in a way that gives effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory. A statute is rendered nugatory when an interpretation fails to give it meaning or effect." *Esurance Prop & Cas Ins Co*, 507 Mich 498, 508-509; 968 NW2d 482 (2021). As Farm Bureau observes, if Matick Chevrolet's shuttle vans do not fall within the purview of MCL 500.3114(2), there would be no need for the dealership, or any other car dealership, to maintain insurance on their courtesy shuttle, rendering the exception nugatory in this regard. This would be an absurd result.[1] Because the plain language "operated in the business of" means business that is regular or systematic, I question the necessity for the second prong of the "primary purpose/incidental nature test." Notably, there are several examples in our caselaw where the same result would have been reached without applying the second prong of the test.

In *Thomas v Tomczyk*, 142 Mich App 237, 239; 369 NW2d 219 (1985), a pre-*Farmers Ins Exch* case, a college student paid a friend for transportation to and from school. Although this was a "commercial" arrangement, *Sentry Ins*, 91 Mich App at 114, making money on transportation was not the "primary function" of the vehicle. *Thomas*, 142 Mich App at 240 n 2. When the friend

---

[1] Statutes "should be construed to avoid absurd results that are manifestly inconsistent with legislative intent . . . ." *Barrow v City of Detroit Election Comm*, 301 Mich App 404, 416; 836 NW2d 498 (2013).

purchased insurance for the vehicle, the insurer was not able to adequately assess the risk of him using his personal vehicle for a for-profit endeavor involving multiple other passengers.

In *Schiller v Home-Owners Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued October 24, 2013 (Docket No. 310085),[2] relied on heavily by Farm Bureau on appeal, this Court held that a hotel courtesy van was a motor vehicle used in the business of transporting passengers, and § 3114(2) applied. The van was used by the Comfort Inn to transport passengers to and from the airport and hotel, thus, the first prong of the test was easily met and no further analysis was needed. *Schiller*, unpub op at 5. This Court went on to hold the second prong was also met because the evidence demonstrated that "the business of providing lodging and a shuttle service go hand in hand in drawing patrons to the hotel." *Id*. "[T]he hotel's website advertises a 'Stay and Fly Package,' which includes the shuttle service, as a 'very convenient alternative to airport parking,' and lists a free 'airport shuttle' as a hotel amenity." *Id*.

*Potts v Solis*, unpublished per curiam opinion of the Court of Appeals, issued September 16, 2014 (Docket No. 316142), which Motorists argues is factually similar to this case, concerned a used car dealership where 75% of business came from walk-in customers, while 25% of business came from customers who were prequalified by telephone, picked up, and transported to the dealership. The dealership did not maintain any cars specifically for transporting customers, and when required to transport a customer, the dealership's porter would borrow a used car from the dealership's lot. The dealership did not have a designated used car for pick up, and one was selected at random. When a claimant injured while being transported to the dealership in a used car tried to recover PIP benefits, the trial court found, and this Court affirmed, that the primary purpose of any vehicle on the lot was to be displayed for sale, not to transport passengers. Neither the vehicle in question, nor any other vehicle at the dealership, was designated for use in transporting customers. Thus, MCL 500.3114(2) did not apply. *Potts*, unpub op at 2-4.

Compare with *State Farm Mut Ins Co v Progressive Mich Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued September 29, 2005 (Docket No. 262833), in which a panel of this Court held that a van specifically purchased for and equipped to handle transportation of wheelchair-bound and other passengers, and insured according to the commercial requirements established by the Area Agency on Aging that referred clients to the business, was a motor vehicle operating in the business of transporting passengers under § 3114(2). This was because the transportation component of the adult day care provider's business "was important enough for the business to purchase a vehicle that was used primarily for and insured specifically for transporting" the day care's clients. *State Farm*, unpub op at 3. All of the aforementioned cases can reach the same outcome if only the first factor of the two-factor analysis is considered.[3]

---

[2] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Kennard v Liberty Mut Ins Co*, 341 Mich App 47, 53 n 2; 988 NW2d 797 (2022) (quotation marks and citation omitted).

[3] There are cases from this Court that have decided the primary purpose of the vehicle in question was to transport passengers, but because the primary purpose of the entity providing the vehicle

Further, a close read of *Farmers Ins Exchange* reveals the second prong of the test, arguably, is obiter dictum. "[D]ictum is a judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case . . . ." *Carr v City of Lansing*, 259 Mich App 376, 383-384; 674 NW2d 168 (2003) (citation and quotation marks omitted). It is a well-settled rule that such comments do not constitute binding authority. *City of Highland Park v State Land Bank Auth*, 340 Mich App 593, 612; 986 NW2d 638 (2022), citing *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 557-558; 741 NW2d 549 (2007). "But if a court intentionally addresses and decides an issue that is [relevant] to the controversy in the case, the statement is not dictum even if the issue was not decisive." *Pew v Mich State Univ*, 307 Mich App 328, 334; 859 NW2d 246 (2014), citing *Griswold Props*, LLC, 276 Mich App at 563. Because this Court in *Farmers Ins Exch*, 256 Mich App at 701, decided that the vehicle in question did not fall within § 3114(2) because its primary use was as a personal vehicle, this Court never needed to decide whether providing transportation to children at the day-care for a fee was incidental to the day-care's primary business, rendering the creation of the second prong obiter dictum. Still, the discussion seems intentional and relevant to the controversy and as a result, will likely trigger an analysis under stare decisis.

Reconsidering the second prong of this test should give the Michigan Supreme Court little concern under the principles of stare decisis.[4] First, *Farmers Ins Exch* was wrongly decided because it created a second prong which added language to § 3114(2) that does not exist, and has the opposite effect of controverting the statute's legislative intent by complicating litigation on whether the exception applies. Next, *Farmers Ins Exch* defies practical workability. The present case is evidence of that. The second prong of this test has become a costly deep dive into profit margins, corporate data, even trade secrets. Overruling *Farmers* and adjusting the assessment under § 3114(2) ends unnecessary litigation on numerical evidence, such as revenue and expenditure calculations. Trial courts vary as to what are questions of fact and questions of law when analyzing the second prong. And despite this confusion and unworkability, overwhelmingly the other cases applying the test still reached the right result under the plain language of the statute and the first prong, rendering reliance interests minimal. Given that the second prong is superfluous, it cannot be said to be "so accepted" and "so fundamental" as to create real-world dislocations if changed. *Robinson v Detroit*, 462 Mich 439, 466; 613 NW2d 307 (2000).

---

was not to transport passengers under the second prong, the facts did not fall within the purview of § 3114(2). See *Ahee v City of Novi*, unpublished per curiam opinion of the Court of Appeals, issued March 19, 2019 (Docket No. 341072).

[4] Reaching the conclusion that *Farmers Ins Exch* must be overruled requires an analysis of whether it was wrongly decided, "whether [it] defies 'practical workability,' whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision." *Robinson v Detroit*, 462 Mich 439, 464; 613 NW2d 307 (2000).

So while I agree with the majority that this record has material questions of fact as to the application of the second prong of the "primary purpose/incidental nature test," I ultimately question whether that test is necessary at all. I urge the Michigan Supreme Court to weigh in.[5]

/s/ Adrienne N. Young

---

[5] The Michigan Supreme Court has not analyzed § 3114(2) under "the primary purpose/incidental nature test." However, in *Farmers Ins Exch v Mich Ins Co*, 491 Mich 924 (2012), the Michigan Supreme Court granted leave to appeal a case from this Court wherein the test was applied. The appeal was limited to the issue of whether the test was consistent with the language of § 3114(2) and, if so, whether it was applied properly to the facts of the case. *Farmers Ins Exch*, 491 Mich at 924. The order was subsequently vacated and leave to appeal was denied because the Court was no longer persuaded that the questions presented should be reviewed. *Farmers Ins Exch v Mich Ins Co*, 493 Mich 1015 (2013). The case appealed from this Court, *Farmers Ins Exch v Mich Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued October 18, 2011 (Docket Nos. 298984 and 298985), primarily concerned the proper application of the first prong of the test.